IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

MAY 1 8 2009

CLERK, U.S. DISTRICT COURT
By _____
        Deputy

| | | |
|---|---|---|
| JEFFREY DEAN HESS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | NO. 4:8-CV-231-A |
| | § | |
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Defendant. | § | |

MEMORANDUM OPINION
and
ORDER

Came on for consideration the motion for summary judgment of defendant, United States of America, as to all claims and causes of action filed by plaintiff, Jeffrey Dean Hess, who at the time of the events giving rise to this action was incarcerated at the Federal Correctional Institution in Fort Worth, Texas ("FCI-Fort Worth").[1] Plaintiff filed no response. Having considered defendant's motion, the summary judgment record, and pertinent legal authorities, the court has concluded that the motion should be granted, and that all of plaintiff's alleged claims and causes of action should be dismissed.

---

[1]According to Bureau of Prison records, plaintiff was released from prison on July 10, 2008.

I.

## Plaintiff's Claims

Plaintiff instituted this action pro se on April 4, 2008, by filing a complaint pursuant to the Federal Tort Claims Act, 28 U.S.C. § 1346(b), 2671 et seq. ("FTCA"). Plaintiff complains that medical staff at FCI-Fort Worth were "careless and negligent" when they assigned him to a top bunk given his medical conditions. Pl.'s Compl. at 4. Plaintiff claims that as a result of FCI-Fort Worth's negligence he fell off the top bunk and sustained injury.

II.

## The Summary Judgment Motion

The government contends that it is entitled to summary judgment on all of plaintiff's claims because he cannot establish that defendant violated the applicable standard of care, and because any damages he sustained are de minimus and should be dismissed as frivolous pursuant to the authority of 28 U.S.C. § 1915(e)(2)(B)(i).

III.

## Facts

The facts set forth below are undisputed in the summary judgment record:

Plaintiff arrived at FCI-Fort Worth on June 13, 2007, to begin serving a twenty-four month term of imprisonment. Upon arrival plaintiff's condition was evaluated by medical staff, at which time he reported pain in his back from a previous injury, for which he was taking Ultram, a pain reliever. As Ultram was a non-formulary medication, medical staff tapered plaintiff off of that drug and instead prescribed Tylenol for pain relief.

New prisoners at FCI-Fort Worth are examined by medical staff within fourteen days of their arrival. At plaintiff's exam on June 20, 2007, he again reported a previous back injury and lower back pain, and medical staff also noted a partial amputation of three fingers on his right hand. Medical staff arranged for an x-ray of plaintiff's lumbar spine and prescribed Naproxen Sodium, an anti-inflammatory medication.

When a prisoner at FCI-Fort Worth has a medical complaint but is not already scheduled for an appointment, he reports to triage at the medical center. There, medical staff record the prisoner's complaints to determine if immediate medical attention is warranted. If it is not, the prisoner is placed on a call-out list to be seen within the next fourteen days.

On July 9, 2007, plaintiff reported to triage, complaining of numbness from the waist down and in his arms, as well as

3

uncontrolled movement of his body parts. Plaintiff further
complained of headaches, dizziness, feeling sick to his stomach,
and severe cramps. Plaintiff's symptoms were consistent with
known side effects of withdrawal from Ultram. Plaintiff was
placed on the call-out list for July 18, 2007.

Prior to his scheduled appointment, plaintiff reported to
triage on July 10 and July 12, 2007, again complaining of
headaches, dizziness, and uncontrolled body movements when at
rest. He complained that the Naproxen Sodium made him sick and
that the Tylenol was not working. During his visit on July 12,
plaintiff complained that he had fallen from his bunk because of
the uncontrolled movements (but did not complain of any injury),
and told medical staff he still experienced pain from his
amputated fingers and needed additional surgery. During that
visit it was noted that he was scheduled for call-out on July 18.

During his appointment on July 18, 2007, plaintiff
complained that his back was causing uncontrolled movement in his
lower extremities and that the Naproxen Sodium was making him
sick. Medical staff evaluated plaintiff and noted that he was
able to ambulate, sit, or stand without difficulty, his gait and
range of motion were normal, and he was able to bend and touch
his feet without difficulty. Medical staff discontinued the

4

Naproxen Sodium. Because the x-ray of his spine was not yet available, staff scheduled him for a follow-up appointment on July 25, 2007.

On July 25, 2007, plaintiff was again examined by medical staff, who also at that time reviewed his lumbar spine x-ray. The x-rays revealed a normal lumbar spine. Although medical staff asked plaintiff to provide the address of his previous health care provider so they could obtain records related to plaintiff's back, he failed to do so. Medical staff noted a lower bunk pass was not clinically indicated and none was issued.

On August 14, 2007, plaintiff again reported to triage, claiming he fell because of his uncontrolled movements, resulting in scrapes and bruises. Plaintiff claimed he had been falling but had failed to report it to anyone or to visit the clinic for evaluation. Upon examining plaintiff medical staff found no abnormalities, nor did they find the scrapes and bruises reported by plaintiff. Medical staff observed that plaintiff exhibited no difficulty ambulating, his range of movement was within normal limits, he could stand without assistance and showed no signs of pain or discomfort. Medical staff requested x-rays of plaintiff's neck and thoracic spine for a baseline evaluation. Plaintiff still had not provided the address of his previous healthcare

provider, so medical staff were unable to obtain any information
about any prior back injury or subsequent treatment.

On September 13, 2007, plaintiff again reported to triage,
claiming he fell from his bunk on September 11, 2007. Plaintiff
claimed to have a "good size knot" on his head, as well as being
"bruised from knee to hip bone," and having "something wrong"
with his side. Def.'s App. at 4-5, 27. However, upon examination,
medical staff found only a bruise on plaintiff's upper right leg.
An x-ray of his hip also revealed no abnormalities. Nothing was
found to corroborate plaintiff's complaints or alleged injuries.

On September 18, 2007, plaintiff reported to the clinic for
a scheduled appointment with his assigned physician. Plaintiff
claimed he had previously fallen and hit his head while at the
county jail, after which he began experiencing uncontrolled
movements in his arms and legs, with a loss of sensation from his
waist down. The examining physician observed that plaintiff had
good range of motion without spasms, good balance, no
difficulties moving from sitting to standing, and had no
difficulties completing balance and neurological testing. The
examining physician noted his concern that plaintiff was
malingering, but out of an abundance of caution due to
plaintiff's reported fall at the county jail, he ordered a

magnetic resonance imaging ("MRI") scan of plaintiff's brain and spine. The results of the MRI were unremarkable.

On November 9, 2007, plaintiff was seen at the medical clinic by the FCI-Fort Worth Clinical Director, Dr. Tubera ("Tubera"), as a result of plaintiff's administrative complaints. His complaints primarily concerned his partially amputated fingers, as well as headaches, dizziness, and uncontrolled movements, for which plaintiff denied any associated triggers. Tubera diagnosed plaintiff with headaches and a movement disorder with no apparent cause, and restricted plaintiff to a lower bunk, no lifting more than fifteen pounds, and no bending or twisting. These restrictions were temporary so that medical staff could explore the cause of plaintiff's symptoms based on his reported fall on September 11, 2007. Medical restrictions, such as a lower bunk or lifting limitations, are issued at FCI-Fort Worth only if substantiated by objective medical evidence. Such restrictions are not issued solely on the basis of a prisoner's subjective complaints, in order to prevent malingering or perceived preferential treatment. In Tubera's medical opinion, prior to September 11, 2007, no objective medical evidence indicated that plaintiff required a lower bunk restriction, or any other medical restriction. Based on a review of plaintiff's medical file,

Tubera was unable to locate any diagnostic tests or other medical evidence to substantiate plaintiff's complaints of uncontrollable movements. Tubera was also unaware of any medical condition, including grand mal seizures, that would cause uncontrollable movement of such force that it could propel a body off a bed when at rest, as plaintiff claimed had happened.

IV.

## Applicable Summary Judgment Principles

A party is entitled to summary judgment on all or any part of a claim as to which there is no genuine issue of material fact and as to which the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). The moving party has the initial burden of showing that there is no genuine issue of material fact. Anderson, 477 U.S. at 256. The movant may discharge this burden by pointing out the absence of evidence to support one or more essential elements of the non-moving party's claim "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, 477 U.S. 317, 323-25 (1986). Once the moving party has carried its burden under Rule 56(c), the non-moving party must do more than merely show that

8

there is some metaphysical doubt as to the material facts. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The party opposing the motion may not rest on mere allegations or denials of the pleadings, but must set forth specific facts showing a genuine issue for trial. Anderson, 477 U.S. at 248, 256. To meet this burden, the nonmovant must "identify specific evidence in the record and articulate the 'precise manner' in which that evidence support[s] [its] claim[s]." Forsyth v. Barr, 19 F.3d 1527, 1537 (5th Cir. 1994). An issue is material only if its resolution could affect the outcome of the action. Anderson, 477 U.S. at 248. Unsupported allegations, conclusory in nature, are insufficient to defeat a proper motion for summary judgment. Simmons v. Lyons, 746 F.2d 265, 269 (5th Cir. 1984).

V.

## Analysis

The FTCA authorizes civil actions for damages against the United States for personal injury or death caused by a government employee's negligence when a private individual under the same circumstances would be liable under the substantive law of the state in which the negligence occurred. 28 U.S.C. § 1346(b); Hannah v. United States, 523 F.3d 597, 601 (5th Cir. 2008).

9

Because state law controls liability for medical malpractice under the FTCA, and because the alleged negligence here is claimed to have occurred in Texas, Texas law applies. Hannah, 523 F.3d at 601; Ayers v. United States, 750 F.2d 449, 452 n.1 (5th Cir. 1985). To prove medical malpractice under Texas law, the plaintiff bears the burden to establish "(1) the physician's duty to act according to an applicable standard of care; (2) a breach of that standard of care; (3) injury; and (4) causation." Hannah, 523 F.3d at 601.

"The standard of care is a threshold issue which the plaintiff must establish before the fact finder moves on to consider whether the defendant breached that standard of care to such a degree that it constituted negligence." Quijano v. United States, 325 F.3d 564, 567 (5th Cir. 2003). Unless the treatment provided is a matter of common knowledge or within a layman's experience, plaintiff must provide expert testimony to prove the standard of care, and such testimony must set forth the standard of care in the community where the medical care was provided or in similar communities. See id. at 567-68; Hannah, 523 F.3d at 601.

Plaintiff's claims fail as he has made no attempt to offer expert testimony to establish the standard of care owed to him by

defendant. The parties' deadline to designate expert witnesses was February 6, 2009, and plaintiff neither designated an expert nor sought leave of court to extend the deadline. Nor has plaintiff alleged that treatment for his ailments is within a layman's common knowledge or experience such that expert testimony is unnecessary. The uncontroverted summary judgment record shows that plaintiff was evaluated by medical staff upon his arrival to FCI-Fort Worth and on seven additional occasions from June 13, 2007, through September 11, 2007, the date plaintiff claimed he was injured in a fall from his bed. Throughout these multiple evaluations, which included x-rays, medical staff observed no abnormalities or evidence of any underlying problem or condition. Nothing in his medical file provided objective clinical support for his complaints. Absent any evidence of an underlying medical condition, even Tubera could provide no basis for plaintiff's alleged symptoms. Despite the lack of objective evidence to support plaintiff's complaints, medical staff continued to prescribe various treatments to ease his pain and discomfort. What the appropriate standard of care is, and whether the treatment regime attempted on plaintiff's behalf during the period he was at FCI-Fort Worth comported with that standard of care, is not a matter of common knowledge, nor

11

is it within the experience of a layman. Under applicable Texas

law, expert testimony was required for plaintiff to meet his

burden of proof. As plaintiff failed to provide expert testimony,

he cannot create a material fact issue on the standard of care.

See Hannah, 523 F.3d at 602.

As the court finds plaintiff's failure to establish the

standard of care dispositive of his claims, it need not reach the

additional grounds for summary judgment raised in the motion.

VI.

## Conclusion and Order

For the reasons discussed above, the court concludes that

defendant's motion for summary judgment should be granted.

Therefore,

The court ORDERS that all claims and causes of action

asserted by plaintiff, Jeffrey Dean Hess, against defendant,

United States of America, be, and are hereby, dismissed with

prejudice.

SIGNED May 18, 2009.

JOHN McBRYDE
United States District Judge

12